Filed 6/24/21  P. v. Cuevas CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ENRIQUE N. CUEVAS,<br><br>Defendant and Appellant. | F076129<br><br>(Kern Super. Ct. No. BF077878B)<br><br><br>**OPINION** |

**THE COURT**\*

APPEAL from an order of the Superior Court of Kern County.  Susan M. Gill, Judge.

Jennifer M. Sheetz, for Defendant and Appellant.

Xavier Becerra, Attorney General, Matthew Rodriquez, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Kimberley A. Donohue, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

---

\* Before Franson, Acting P.J., Meehan, J. and De Santos, J.

**INTRODUCTION**

"Defendants who lack United States citizenship sometimes face not only penal sanctions but also harsh immigration consequences if convicted.  Because of this, pleas accepted in the shadow of deficient advice about the risks of deportation can have 'dire' repercussions.  [Citation.]" (*People v. Vivar* (2021) 11 Cal.5th 510, 533 (*Vivar*).)

"[W]hen long-standing noncitizen residents of this country are accused of committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States.  [Citation.]  Because the prospect of deportation 'is an integral part,' and often even 'the most important part,' of a noncitizen defendant's calculus in responding to certain criminal charges [citation], both the Legislature and the courts have sought to ensure these defendants receive clear and accurate advice about the impact of criminal convictions on their immigration status, *along with effective remedies* when such advice is deficient.  [Citations.]" (*Vivar, supra,* 11 Cal.5th at p. 516, italics added.)[1]

Penal Code section 1473.7 is one of the remedies enacted by the Legislature.[2] (*Vivar, supra*, 11 Cal.5th at pp. 517, 523.)  "[L]awmakers considered the problem faced by [noncitizens] who were unaware of the immigration consequences posed by a plea entered many years earlier.  [Citation.]  They did so by enacting section 1473.7, which 'create[d] an explicit right for a person no longer imprisoned or restrained[]' " to file a motion to vacate the conviction that triggered their removal. (*Vivar, supra*, 11 Cal.5th at pp. 523, 525–526.)  As applicable to this case, the moving party may move to vacate his prior conviction under section 1473.7 if he proves by a preponderance of the evidence

---

[1] Amendments to the Immigration and Naturalization Act (INA) have " 'eliminated the distinction between deportation and exclusion proceedings, replacing them with a new, consolidated category – "removal." ' [Citation.]" (*Ledezma-Galicia v. Holder* (9th Cir. 2010) 636 F.3d 1059, 1062–1063, fn. 2.)

[2] All further references to "section 1473.7" are to the statute contained in the Penal Code.

that his conviction is legally invalid because of a prejudicial error damaging his ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. In other words, the moving party must prove his "own error" that was prejudicial about the nature of the plea agreement and the removal consequences. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 (*Camacho*); *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 (*Mejia*).)

**Appellant's motion to vacate**

In May 1996, appellant Enrique N. Cuevas, a noncitizen who entered the United States in 1989 when he was 18 years old, pleaded no contest to a charged felony offense of violating Health and Safety Code section 11370.9, subdivision (a), money laundering in an amount more than $25,000.[3]

At the time of his plea, appellant signed a form that contained the advisement required by Penal Code section 1016.5,[4] that he "may" be subject to deportation as a result of his plea. Appellant was placed on probation, successfully completed his probationary period, and there is no evidence that he was convicted of any other criminal offense.

In 2015, appellant was deported because of his 1996 conviction. By that time, he had lived and worked in California for 26 years, he was married to a citizen of the United States, had six children born in this country, and was the primary breadwinner for his family.

In 2017, appellant filed a motion to vacate his 1996 conviction based on the newly enacted provisions of section 1473.7. At that time, section 1473.7 was interpreted to

---

[3] All further citations to "section 11370.9, subdivision (a)" are to the statute contained in the Health and Safety Code.

[4] All further citations to "section 1016.5" are to the statute contained in the Penal Code.

3.

require the moving party to prove prejudicial ineffective assistance of counsel to obtain relief. (*Camacho, supra,* 32 Cal.App.5th at p. 1005.) Appellant argued his trial attorney was ineffective at the time of his plea, and the error was prejudicial because he would not have agreed to plead no contest if he had known his plea was going to result in his mandatory deportation and exclusion from the United States. The superior court denied the motion, rejected the credibility of appellant's supporting declaration, and held there was no prejudice because he was advised of possible immigration consequences since he received the section 1016.5 warning when he entered his plea.

Appellant has filed this appeal from the superior court's denial of his motion to vacate. While this appeal was pending, section 1473.7 was amended in 2018, effective in 2019, to "expand[] the category of defendants who could obtain relief by eliminating any requirement that the defendant establish ineffective assistance of counsel[]" (*Vivar, supra*, 11 Cal.5th at p. 525; *Mejia, supra*, 36 Cal.App.5th at p. 869) and these amendments apply to appellant's case (*Mejia, supra*, 36 Cal.App.5th at p. 865; *Camacho, supra*, 32 Cal.App.5th at pp. 1006–1008).

We reverse the superior court's ruling and find that based on the currently applicable provisions of section 1473.7, and the California Supreme Court's recent interpretation of the statute in *Vivar*, appellant met his burden to establish prejudicial error under the statute, he is entitled to relief, and his motion to vacate his conviction must be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was born in Mexico in 1971 and entered the United States when he was 18 years old in 1989.

On February 19, 1996, appellant was arrested for engaging in a money laundering transaction. He was held in custody until his plea.

On or about March 16, 1996, an information was filed that charged appellant and a codefendant with a felony violation of section 11370.9, subdivision (a), in the language

4.

of the statute, which states: "It is unlawful for any person knowingly to receive or acquire proceeds, or engage in a transaction involving proceeds, known to be derived from any violation of [the Controlled Substances Act] with the intent to conceal or disguise or aid in concealing or disguising the nature, location, ownership, control, or source of the proceeds or to avoid a transaction reporting requirement under state or federal law," of an amount exceeding $25,000. (§ 11370.9, subds. (a), (d); *People v. Bush* (2017) 7 Cal.App.5th 457, 482, 485.)[5]

## PLEA PROCEEDINGS

At some point after the preliminary hearing, appellant discharged his deputy public defender and retained attorney David Torres to represent him and pleaded no contest to the charged offense.

**The change-of-plea form**

On May 6, 1996, appellant signed a change-of-plea, advisement, and waiver form as part of his plea.[6] In addition to stating his constitutional rights, the printed form included the following advisement.

> "I HAVE BEEN ADVISED OF PENAL CODE SECTION 1016.5: 'If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged *may have* the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.' "[7] (Italics added.)

---

[5] Appellant and the codefendant were charged by a complaint with the same offense and held to answer at a preliminary hearing. The transcript from the preliminary hearing has been destroyed in the regular course of business. The record is silent about underlying facts of the case, and the disposition of the charge against the codefendant.

[6] Appellant submitted the change-of-plea, advisement, and waiver form as an exhibit in support of his 2015 motion to vacate that was filed under section 1016.5, and it was included as part of the record for his section 1473.7 motion to vacate.

[7] Section 1016.5 "requires that before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense may result in deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the

Appellant marked the box next to this paragraph and initialed the adjacent line that stated: "I UNDERSTAND THIS ADVICE." The plea form was signed and dated by appellant, Mr. Torres, and a Spanish interpreter.

**Plea hearing**

On May 7, 1996, appellant appeared in court with Mr. Torres and pleaded no contest to the charged offense. The plea was entered pursuant to *People v. West* (1970) 3 Cal.3d 595, and appellant did not admit a factual basis for the plea.[8] Appellant was placed on probation for three years subject to certain terms and conditions, and he was released from custody at that time.

According to the minute order, appellant was advised "through his attorney" of his constitutional rights and the nature and extent of the charges and punishment that could result if he entered a plea, and his "signed waiver of rights [was] filed and incorporated by reference."

**Expungement of conviction**

On August 31, 1999, appellant, again represented by Mr. Torres, filed a motion pursuant to Penal Code section 1203.4 to withdraw his plea, and dismiss and expunge his 1996 conviction because he had successfully completed probation. The district attorney did not file opposition.

---

United States. [Citation.]" (*People v. Martinez* (2013) 57 Cal.4th 555, 558, fn. omitted.) "[A] validly executed waiver form is a proper substitute for verbal admonishment by the trial court. [Citation.]" (*People v. Ramirez* (1999) 71 Cal.App.4th 519, 521.)

The California Supreme Court recently held that in determining the merits of a section 1473.7 motion to vacate, a section 1016.5 advisement on a plea form that is signed at the time of the plea may be insufficient to mitigate the prejudice from the defendant's erroneous beliefs about the impact of his plea on immigration consequences, since the advisement states that deportation is a possibility, when deportation in certain circumstances is mandatory. (*Vivar*, *supra*, 11 Cal.5th at p. 533.)

[8] The reporter's transcript of the plea hearing no longer exists.

On September 14, 1999, the court held a hearing on the motion; the reporter's transcript no longer exists. According to the minute order, the court granted appellant's motion to withdraw his plea, and appellant entered a not guilty plea to the original charge of violating section 11370.9, subdivision (a). The court granted appellant's motion to dismiss the charge pursuant to Penal Code section 1203.4, without objection from the district attorney.[9]

There is no evidence that appellant was convicted of any criminal offense after his conviction in 1996, and the dismissal and expungement of that conviction in 1999.

### APPELLANT'S SECTION 1473.7 MOTION TO VACATE

According to the appellate record, appellant was deported from the United States to Mexico in 2015 as a result of his 1996 conviction.[10] The People have not disputed this assertion.

On March 13, 2017, appellant's attorney filed a motion to vacate his conviction based on section 1473.7, subdivision (a)(1), which was enacted in 2016 and became effective on January 1, 2017. (Stats. 2016, c. 739 (A.B. 813), § 1.) As noted above, the statute was interpreted at that time to require the moving party to prove prejudicial ineffective assistance of counsel to obtain relief. (*Mejia, supra,* 36 Cal.App.5th at p. 861; *Camacho*, *supra*, 32 Cal.App.5th at p. 1005.)

---

[9] A dismissal and expungement for rehabilitation purposes under Penal Code section 1203.4 has no effect on the federal immigration consequences of a conviction that subjects a person to mandatory removal. (*Ocon-Perez v. Immigration & Naturalization Service* (9th Cir. 1977) 550 F.2d 1153, 1154; *Vivar, supra*, 11 Cal.5th at p. 522.) In contrast, a conviction vacated because of procedural or substantive infirmities does not remain valid for immigration purposes. (*Camacho, supra,* 32 Cal.App.5th at pp. 1004–1005.)

[10] In May 2015, appellant filed a motion to vacate his conviction based on section 1016.5. He acknowledged the section 1016.5 advisement was on the printed plea form but argued that language was insufficient to advise about the potential immigration consequences of his plea. The court denied the motion because he signed the change-of-plea form with the section 1016.5 immigration advisement.

7.

Appellant's motion asserted his 1996 plea was legally invalid under section 1473.7, subdivision (a)(1) because his trial attorney failed to advise him about the harsh immigration consequences that would result from his plea or negotiate an alternate plea to an offense that would not have resulted in his deportation, and the error was prejudicial because he would not have entered the plea if he had known that the conviction was going to result in his mandatory deportation and permanent exclusion from the United States.

Appellant's motion was supported by declarations and documentary exhibits.

**Appellant's declaration**

In appellant's sworn declaration, signed in January 2017 under penalty of perjury, he declared he was born in 1971, entered the United States when he was 18 years old in 1989, lived in California for the next 26 years, and worked in construction and landscape. He was married to a citizen, his six children (ranging from ages one to 21 years) were born here, most of his extended family legally lived in the United States, and he was "the primary breadwinner" for the family.

Appellant stated the circumstances of his deportation:

> "Because Department of Homeland Security considers my 1996 conviction under Health and Safety Code section 11370(a) [*sic*] a deportable offense as an aggravated felony, I face permanent exclusion from the United States.[11] [¶] … [¶]
>
> "Despite my long-term continuous residence and connections to the U.S., and the fact that I long ago completed my sentence and expunged this case, I now face permanent banishment based upon this conviction."

---

[11] Appellant's declaration misstated his conviction for violating Health and Safety Code section 11370.9, subdivision (a), as a violation of section "11370(a)," a statute that prohibits a grant of probation for a person convicted of specific narcotics offenses when that person has a prior narcotics conviction.

Appellant declared he met with his trial attorney, Mr. Torres, one time while he was in jail and before he entered his plea. "He never interviewed me to ask about my immigration status before advising me to accept the plea bargain offered by the DA."

"When I discussed a potential plea with my attorney, David Torres, he explained that the plea bargain was the best deal for me because I faced prison if I went to trial, and the plea agreement limited my exposure to a brief period in jail. By pleading guilty, I was assured a short jail term. I do not remember signing anything at the time of my plea."[12]

Appellant further declared:

"I do not remember receiving any court admonishment regarding potential immigration consequences, nor do I remember any discussion regarding immigration consequences or any other potential non-deportable pleas with my attorney prior to changing my plea. *Had I been warned of the immigration consequences of my plea, I would not have entered such a plea. I would have asked my lawyer to negotiate for a different deal to mitigate the immigration consequences, or I would have insisted on going to trial—I would have done whatever was necessary to avoid the immigration consequences of permanent exclusion*." (Italics added.)

Appellant declared his life was in the United States, he wanted to become a citizen and continue to support his family, and he did not want to live in Mexico.

Appellant's declaration concluded:

"My current lawyer has told me that if my conviction is vacated, the district attorney might charge me again for the same crime. I understand that. However, my current lawyer has also advised me that I could have plead [*sic*] to a similar, non-deportable offense, carrying the same criminal consequences. Had I known the case would constitute a deportable

---

[12] While appellant declared he did not remember signing the change-of-plea form, he submitted that document as an exhibit in support of his section 1016.5 motion to vacate in 2015, and it is part of the instant appellate record. In his supporting declaration, appellant never claimed he did not sign the form and he did not challenge the validity of his initials or signature. Instead, he stated he had no memory of signing anything or receiving advisements at the time of his plea. In appellant's opening brief filed in this appeal, he argued that he has "always acknowledged the signed … waiver form (bearing his signature) in the record," and submitted the form in his section 1016.5 motion to vacate.

conviction under immigration law, I would have definitely insisted that my attorney negotiated an alternate plea that would mitigate the immigration consequences."[13]

The Kern County District Attorney's office filed opposition to appellant's motion to vacate and argued he was not entitled to relief based on an ineffective assistance claim because there was no evidence of prejudice, he was fully advised of the immigration consequences based on the section 1016.5 advisement in the change-of-plea form, and he still freely and voluntarily entered his plea.

## THE EVIDENTIARY HEARING

On May 9, 2017, the superior court conducted an evidentiary hearing on appellant's section 1473.7 motion to vacate. Appellant's attorney advised the court that he was deported in 2015 and, if the court granted his motion, he would be returned to this country. The district attorney's office appeared in opposition.

David Torres, appellant's attorney at the 1996 plea hearing, was called by the district attorney and was the only witness who testified at the evidentiary hearing.[14] Mr. Torres was primarily questioned about the issues then relevant to appellant's claim of ineffective assistance.

Mr. Torres did not have an independent recollection of appellant or his case. Starting in 1992, his office used a questionnaire for new clients that included "something that would indicate … whether or not a person is a citizen, a legal resident or they're undocumented." Based on his practices at the time, Mr. Torres would have considered a client's immigration status and attempted to negotiate a plea agreement that would be

[13] Appellant's motion was also supported by declarations from two immigration lawyers about the harsh immigration consequences resulting from his plea and conviction, and asserting his attorney was prejudicially ineffective for failing to negotiate an alternate plea to a different criminal offense that did not carry the same consequences.

[14] At the hearing, appellant's attorney stated the motion was based on the declarations filed in support of the section 1473.7 motion to vacate, as summarized above, and asked the court to review the declarations. The district attorney did not object to the court's consideration of the contents of these declarations.

favorable to the client's immigration status, but "what your good intentions are may not be agreed upon by the prosecution," and "that's where sometimes one may run into a wall."

Mr. Torres testified that at the time of appellant's plea, he would have advised a client about the immigration consequences of the plea. If the client did not understand, he would have requested a continuance, "[b]ut yes, when the rights are read to the client, I always tell them that … they will be deported just to let them know that that's a strong possibility." Mr. Torres reviewed appellant's change-of-plea form and testified he never would have signed such a document without advising his client of the immigration consequences of his plea since it was one of the mandatory advisement items.

Upon reviewing the surviving court records from this case, Mr. Torres recognized the name of the deputy district attorney who was involved in this case, and testified he would not have been able to negotiate an alternate plea to a different offense that did not carry the same harsh immigration consequences because she "was a very tough prosecutor and basically she stood by her guns," and there was "little room to negotiate" such cases at that time.

## THE COURT'S DENIAL OF THE SECTION 1473.7 MOTION TO VACATE

On June 15, 2017, the superior court denied appellant's motion to vacate and issued a lengthy opinion that summarized the 2017 version of section 1473.7, ineffective assistance, and Mr. Torres's testimony at the evidentiary hearing.

As we will discuss, *post*, we address these findings because appellant's declaration is relevant to establish that he met his burden to obtain relief under the current version of section 1473.7. The California Supreme Court has now clarified that upon review of the denial of a motion to vacate under section 1473.7, appellate courts must use the independent standard of review and "should … give particular deference to factual findings based on the trial court's *personal observations of witnesses.* [Citation.] *Where … the facts derive entirely from written declarations and other documents, however,*

11.

*there is no reason to conclude the trial court has the same special purchase on the question at issue ….*" (*Vivar, supra*, 11 Cal.5th at pp. 527–528, italics added.)

In denying the motion under the 2017 version, the court stated the only disputed question was "whether the defendant has established that at the time of the plea he was not sufficiently advised of the immigration consequences of his plea. Or, as the California Supreme Court has held in the context of a motion to withdraw a plea due to failure to comply with section 1016.5, the defendant must show ' "that a reasonable probability exists that, but for counsel's incompetence, he would not have pled guilty and would have insisted, instead, on proceeding to trial." ' [Citations.]"

The court rejected the credibility of the entirety of appellant's declaration submitted in support of his motion, and found Mr. Torres's hearing testimony more credible even though he lacked a direct memory of appellant's case:

> "[Appellant's] assertions that he remembers neither signing any documents nor being admonished about potential immigration consequences is at odds with the other evidence before the court. [Appellant] *did* sign a waiver of rights form, which is in the file. Moreover, that waiver of rights form contained the … section 1016.5 admonishment that if [appellant] is not a citizen, entering a plea may have immigration consequences, and the defendant initialed that admonishment. Although this non-specific admonishment is not sufficient in and of itself to establish [appellant's] knowledge of the immigration consequences facing him [citation], it *is* significant, as it casts doubt on either [appellant's] memory or his truthfulness.[15]

> "Second, [appellant] says he does not remember his attorney discussing immigration consequences with him. However, Mr. Torres testified that every defendant he represented since 1992 completed an intake sheet that asked about immigration status, and that it was his custom

---

[15] As we will discuss, *post*, the California Supreme Court held that in determining the merits of a section 1473.7 motion to vacate, a section 1016.5 advisement on a plea form may be insufficient to mitigate the prejudice from the defendant's erroneous beliefs about the impact of his plea on immigration consequences, since the advisement states that deportation is a possibility, when deportation in certain circumstances is mandatory. (*Vivar*, *supra*, 11 Cal.5th at p. 533.)

and practice to include discussions about immigration consequences, about which he was well versed, in his discussions with his clients about a potential plea. Mr. Torres's credibility has not been assailed. Thus, [appellant's] statement indicates either a faulty memory or lack of truthfulness.

"[Appellant] has argued that there were other plea agreements that could have been negotiated that would have prevented the dire immigration consequences the defendant has faced as a result of his conviction in this case, but which would have had more severe criminal consequences, such as a charge of transportation of a controlled substance or possession of a controlled substance for sale. Mr. Torres asserted that because the prosecutor in this case was tough on crime, it is doubtful she would have agreed to anything other than the charge to which the defendant pled. However, [appellant] makes a compelling argument that it is unlikely that a prosecutor would have rejected a proposed plea to a more serious crime resulting in more time in custody. *Although [appellant] has declared that he 'would not have entered the plea if [he] had been warned of the immigration consequences,' he has been shown to be less than credible with respect to his other statements. Moreover, it is also reasonable that in the immigration context of 1996, when [appellant] entered this plea, [appellant] would have chosen a plea resulting in a shorter period of incarceration even notwithstanding the potential for future deportation, over a longer period in custody with less certain immigration risks.* [¶] … [¶] "The burden is on [appellant] to establish he did not know of the immigration consequences at the time of his plea. *Although he has made that statement in his declaration, the evidence weighs against the truthfulness of that statement.* As a result, the Court cannot find by a preponderance of the evidence that [appellant] did not meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of his plea." (Third and fourth italics added.)

## DISCUSSION

### I. Section 1473.7

We review the merits of appellant's motion under the 2019 version of section 1473.7, because the amendments represented "a clarification of existing law and therefore appl[y] to nonfinal judgments, including this appeal," and the parties have not disputed this point. (*Mejia, supra*, 36 Cal.App.5th at p. 865; *Camacho, supra*, 32 Cal.App.5th at pp. 1006–1008.)

13.

Section 1473.7, subdivision (a)(1) states the basis to bring a motion to vacate as applicable to this case:

> "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subds. (a)(1), (e)(4).)[16]

## A.    *Vivar*

In *People v. Vivar, supra*, 11 Cal.5th 510, the California Supreme Court addressed the current version of section 1473.7. The court explained that the Legislature originally enacted the statute so that defendants "who were unaware of the immigration consequences posed by a plea entered many years earlier[]" could move to vacate their convictions and obtain relief from imminent immigration orders. (*Vivar, supra*, 11 Cal.5th at p. 523.)

> "Section 1473.7 offers a remedy in the form of permission to withdraw a plea. But it's a remedy available only to some: those who have completed their sentences and who suffered a prejudicial error that damaged their ability to meaningfully understand, defend against, or knowingly accept the plea's actual or potential immigration consequences. [Citations.] A moving party demonstrates prejudice by showing that in the absence of the error regarding immigration consequences, it's reasonably probable the moving party would not have entered the plea. Courts should subject the trial court's prejudice finding under this statute to independent review, a standard that heavily weighs trial court factual findings based on the court's own observations, but not trial court findings arising only from a cold record." (*Id.* at pp. 533–534.)

---

[16] As noted above, the initial version of section 1473.7, that was effective in 2017 and the basis for appellant's motion to vacate, required the moving party to establish prejudicial error based on the ineffective assistance of his attorney at the time of the plea or conviction. (*Camacho, supra,* 32 Cal.App.5th at p. 1005.) While this appeal was pending, section 1473.7 was amended in 2018, effective in 2019, to "expand[] the category of defendants who could obtain relief by eliminating any requirement that the defendant establish ineffective assistance of counsel." (*Vivar, supra*, 11 Cal.5th at p. 525; *Mejia, supra*, 36 Cal.App.5th at p. 869.)

14.

The moving party has the burden of proof by a preponderance of the evidence. (*Vivar, supra*, 11 Cal.5th at p. 517.) *Vivar* affirmed that after the 2019 amendments, "[a] finding of prejudicial error under this provision may, *but need not*, be based on ineffective assistance of counsel. [Citation.]" (*Id*. at p. 523, italics added.)

> "What someone seeking to withdraw a plea under section 1473.7 must show is more than merely an error 'damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences' of the plea. [Citation.] The error must also be 'prejudicial.' [Citation.]" (*Id*. at p. 528.)

> "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea *if the defendant had correctly understood its actual or potential immigration consequences*. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. [Citations.]" (*Vivar, supra*, 11 Cal.5th at pp. 529–530, italics added.)

*Vivar* held that on appeal, the independent standard of review applies and " 'an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that ' "[i]ndependent review is *not* the equivalent of de novo review ...." ' [Citation.]" (*Vivar*, *supra*, 11 Cal.5th at p. 527, italics added in original.) *Vivar* drew a distinction about how certain factual findings are reviewed under this standard:

> "In section 1473.7 proceedings, appellate courts should … give particular deference to factual findings based on the trial court's *personal observations of witnesses*. [Citation.] *Where … the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue*; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate

15.

court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*., at pp. 527–528, italics added, fn. omitted.)

*Vivar* applied these standards to review the moving party's motion in that case, and his declaration that he would not have entered his plea if he understood that it would require his deportation. *Vivar* held the 2019 version of the statute still required the defendant "corroborate such assertions with ' "objective evidence." ' [Citation.] That's what [the defendant] has done here." (*Vivar, supra*, 11 Cal.5th at p. 530.)

> "Time and again, the record readily conveys how [the defendant] would have considered his immigration status 'the most important part' of his decision to plead. [Citation.] [The defendant] was brought to this country at age six as a lawful resident, and he attended schools, formed a family, and remained here for 40 years. At the time of his plea, he had two children, two grandchildren, and a wife, all of whom are citizens and all of whom resided in California. By the time he was deported, his wife was undergoing radiation treatment for a thyroid condition. By contrast, [the defendant] had virtually no ties to Mexico, spoke Spanish 'like an American,' and found it 'difficult to function in Mexican society because people treat [him] like an outsider.' Trial counsel's recollection and contemporaneous notes reflect that [the defendant] was indeed concerned about the 'consequences' of his plea. All of these constitute contemporaneous objective facts that corroborate [defendant's] concern about the immigration consequences of his plea options. [Citation.] [¶] … [¶] … In our view, these objective and contemporaneous facts corroborate, in a most convincing way, the statement in [defendant's] declaration that he 'would never have plead[ed g]uilty' if his attorney had informed him of the plea's consequences. [Citations.]" (*Id*., at pp. 530–531.)

*Vivar* acknowledged the trial court rejected the credibility of the defendant's declaration, but held the appellate court should not have deferred to the trial court's factual findings because those findings were "based entirely on a cold record," and again emphasized that "[a]n appellate court should instead review such findings independently where, as here, the factual record consists entirely of written documents." (*Vivar, supra*, 11 Cal.5th at p. 533.)

Finally, *Vivar* held the section 1016.5 advisements in the defendant's plea form, while consistent with the statutory requirements, "*did not mitigate the prejudice from counsel's deficient immigration advice.* What the plea form stated was that deportation was a possibility. [Citation.] The problem for [the defendant], though, was that deportation in these circumstances was mandatory – and when he accepted the plea deal, he remained unaware of that crucial fact. [Citation.] In light of [the defendant's] extensive ties to the United States, the generic advisements in the plea form do not undermine our conclusion that he was prejudiced by counsel's failure to inform him that his plea would result in his deportation. [Citations.]" (*Vivar, supra*, 11 Cal.5th at p. 533, italics added.)

### B.     *Camacho*

*Vivar* favorably cited *Camacho* and *Mejia,* two cases that are very similar to this case, where the defendants filed motions to vacate based on ineffective assistance under the original version of section 1473.7, the trial courts denied relief, the statute was amended while the cases were pending on appeal, and the appellate courts held the defendants were entitled to relief under the 2019 version of section 1473.7. (*Vivar*, *supra*, 11 Cal.5th at pp. 529, 530–531.)

In *Camacho*, the defendant pleaded no contest in 2009 to possession of marijuana for sale, defendant successfully completed probation, and the court granted his motion under section Penal Code section 1203.4 to vacate his conviction and dismissed the case. (*Camacho, supra*, 32 Cal.App.5th at pp. 1000–1001.)

In 2017, the defendant filed a motion to vacate his conviction under the newly enacted version of section 1473.7 and argued he did not understand that he faced potential immigration consequences when he entered his plea based on counsel's ineffective assistance. (*Camacho, supra*, 32 Cal.App.5th at pp. 1001, 1003 & fn. 3.) In his supporting declaration, the defendant stated he was brought to the United States when he was two years old, he was married to a citizen, they had two young children, and he

17.

was employed. When he was arrested, he retained an attorney who never discussed immigration issues. When he entered his plea, the defendant heard the judge say that he could be deported, but his attorney said everything would be fine and never told him about the immigration consequences or that he could take the case to trial. The defendant declared he would not have taken the plea if he had known it would have prevented him from obtaining legal status. (*Id*. at p. 1001.)

At the hearing on the motion, the defendant testified he told his attorney that he was not born in the United States and was undocumented. When they discussed his immigration issue, it was mostly about avoiding jail time. The defendant thought that if he received jail time, he would be deported and been fired from his job. His attorney did not tell him the charge would subject him to mandatory deportation or other immigration consequences. (*Camacho*, *supra*, 32 Cal.App.5th at p. 1002.) The defendant's attorney testified at the hearing that he could not remember discussing immigration consequences with the defendant. At the time, his practice was to tell clients that any felony or serious misdemeanor could get them deported, and that they should get the advice of an immigration attorney. He thought it would help with the defendant's immigration consequences if the charge could be reduced to a misdemeanor, but the prosecutor would not agree because of the quantity of marijuana. He told the defendant that a motion to expunge might help him because of possible immigration problems, but he did not investigate the effect of expungement in immigration cases. (*Id*. at pp. 1002–1003.)

The trial court denied the defendant's motion and found the defendant failed to prove ineffective assistance under the 2017 version of section 1473.7. (*Camacho, supra*, 32 Cal.App.5th at pp. 1003–1004.)

*Camacho* held the defendant's motion should be reviewed under the 2019 version of section 1473.7, and the defendant's declaration and hearing testimony demonstrated by a preponderance of the evidence his "*own error* in believing that a negotiated plea calling for no time in custody would avoid making him deportable, and in not knowing that his

18.

plea would subject him to mandatory deportation and permanent exclusion from the United States." The defendant's testimony was supported by his former attorney's testimony "that he told [the] defendant only that the charge *could* subject him to deportation and that 'we're going to get it down to a misdemeanor and expunged early and maybe that will help'; that he misunderstood the potential immigration consequences and the effect of expungement or reductions of felonies in immigration cases; and that he did not explore possible alternatives to pleading to an aggravated felony." (*Camacho, supra*, 32 Cal.App.5th at p. 1009.) In addition, the defendant provided evidence of his misunderstanding at the time of his plea because he only learned about the immigration consequences when he subsequently consulted an attorney to apply for a permanent resident visa on the basis of his marriage to a citizen. (*Ibid*.)

Camacho further held that based on defendant's strong ties to the country from his childhood, family, and employment, he demonstrated prejudice by a preponderance of the evidence that "he would never have entered the plea if he had known that it would render him deportable," and the errors "damaged his ability to meaningfully understand, defend against, or knowingly accept the adverse immigration consequences of the plea," and the trial court should have granted the motion to vacate. (*Camacho, supra*, 32 Cal.App.5th at pp. 1011–1012.)

### C.    *Mejia*

In *Mejia*, the defendant pleaded to transportation and possession for sale of cocaine and cocaine base in 1994, signed the section 1016.5 advisement on the plea form, and was placed on probation. (*Mejia, supra*, 36 Cal.App.5th at pp. 862–863.) In 2017, he filed a motion to vacate his convictions under section 1473.7. In his supporting declaration, the defendant stated he came to the United States when he was 14 years old, he was married with a child, and had a steady job. After his preliminary hearing, he hired an attorney who hardly spoke to him or asked any questions about his immigration status even though they had to talk through a Spanish interpreter. When he entered his plea, his

19.

attorney said he had no choice but to take the deal or he would otherwise get a long prison term, and that he had to sign the form. The defendant declared that if he had known the charges would result in his imminent deportation, he would have fought the case or tried to negotiate a result that would not destroy his chance to stay in the country. (*Mejia*, at pp. 863–864.)

At the hearing on his motion to vacate, the defendant testified his attorney (who had died) never discussed the possible immigration consequences of his plea, or that a conviction for selling drugs was an aggravated felony under the INA that required his deportation. (*Mejia, supra*, 36 Cal.App.5th at pp. 864–865.) The defendant testified he would not have accepted the plea deal if he had known about the immigration consequences and would have accepted a longer custodial sentence for another criminal offense to avoid deportation. (*Id*. at p. 865.) The trial court denied the defendant's motion based on ineffective assistance of counsel, and concluded he failed to show he would have declined the plea and risked going to trial if he had been fully advised of the immigration consequences. (*Id*. at pp. 864, 865.)

*Mejia* agreed with *Camacho* that the 2019 version of section 1473.7 applied to the defendant's motion to vacate because it was pending on appeal and not yet final. (*Mejia, supra*, 36 Cal.App.5th at pp. 865–866, 871.) *Mejia* held the defendant's undisputed hearing testimony established his "own 'error' " within the meaning of section 1473.7 because "he did not 'meaningfully understand' or 'knowingly accept' the mandatory deportation consequences when he pleaded guilty in 1994. [Citation.] [The defendant] said that he would have never pleaded guilty had he known and understood 'that this would harm me in the future.' " (*Mejia,* at p. 872.)

As for prejudice, *Mejia* found "contemporaneous evidence in the record to substantiate [his] claim that he would not have pleaded guilty had he known about the mandatory and dire immigration ramifications," because he had lived in the country for a substantial period of time with his family, and there were also "lingering questions" about

20.

the strength of the evidence to support the charged offenses.  (*Mejia, supra*, 36 Cal.App.5th at p. 872.)  *Mejia* also found another "contemporaneous substantiation of prejudice" because the defendant entered "a 'straight up' plea directly to the court rather than a negotiated disposition," and he was placed on probation.  It was not likely that he would have been sentenced to the maximum prison term if he had been convicted after a trial because he had no criminal record and it was an unsophisticated crime.  (*Id*. at pp. 872–873.)

## II.     Appellant is Entitled to Relief

We find that as in *Vivar*, *Camacho*, and *Mejia*, appellant met his burden of proving by a preponderance of the evidence his own subjective error that damaged his ability to meaningfully understand, defend against, or knowingly accept the actual adverse immigration consequences of his plea that resulted in his mandatory deportation, and that error was prejudicial.  (*Vivar, supra*, 11 Cal.5th at pp. 529–530; *Camacho, supra*, 32 Cal.App.5th at pp. 1008–1010; *Mejia, supra*, 36 Cal.App.5th at p. 871.)

### A.     *Appellant's Subjective Error*

The first question under section 1473.7 is whether appellant made his own subjective error about the actual or potential adverse immigration consequences of his conviction at the time of his plea.  The focus of this inquiry is "the mindset of the defendant and what he … understood – or didn't understand – at the time the plea was taken …."  (*Mejia, supra*, 36 Cal.App.5th at p. 866.)

As a preliminary matter, the People argue that appellant is not entitled to relief even though he was deported as a result of his conviction, because his violation of section 11370.9, subdivision (a) was not defined by the INA as an offense requiring his mandatory removal at the time of his plea.[17]  Appellant disputes this assertion and argues

---

[17] While the district attorney opposed appellant's motion to vacate below, it did not challenge his motion's assertion that he pleaded to an offense that mandated his deportation at the time of his plea.

that he pleaded to an offense that subjected him to mandatory removal because the INA defined his conviction as an "offense relating to a controlled substance."

We find that appellant was convicted of an offense that mandated his deportation at the time of his plea. Appellant pleaded to the charged violation of section 11370.9, subdivision (a), money laundering of an amount over $25,000, known to be derived from "any violation" of the controlled substances act. (§ 11370.9, subds. (a), (f); *People v. Bush, supra,* 7 Cal.App.5th at pp. 482, 485.) Such a conviction was within the INA's classification of an "offense relating to a controlled substance" and subjected him to mandatory deportation based on the definition and interpretation of that phrase at the time of his plea in 1996, as a matter of law. (See *Johnson v. I.N.S.* (9th Cir. 1992) 971 F.2d 340, 342, & fn. 2; *Forstner v. Immigration & Naturalization Service* (9th Cir. 1978) 579 F.2d 506, 507; *Urena-Ramirez v. Ashcroft* (1st Cir. 2003) 341 F.3d 51, 56–57; *Luu-Le v. I.N.S.* (9th Cir. 2000) 224 F.3d 911, 915–916; *Mielewczyk v. Holder* (2009) 575 F.3d 992, 995; cf. *Mellouli v. Lynch* (2015) __ U.S. __ [135 S.Ct. 1980, 1989–1990; *Madrigal-Barcenas v. Lynch* (9th Cir. 2015) 797 F.3d 643, 644–645.)

The People's contrary argument is based on an alternate classification in the INA, that a conviction for an offense defined as an "aggravated felony" will similarly result in that person's mandatory removal. (See, e.g., *Sessions v. Dimaya* (2018) __ U.S. __ [138 S.Ct. 1204, 1210–1211].) The People assert that when appellant entered his plea, his money laundering conviction was not an aggravated felony because the INA's definition required the amount involved exceed $100,000, and his conviction was only for $25,000. The People further argue that when the INA was subsequently amended after appellant's plea, money laundering was redefined as an aggravated felony if the amount involved exceeded $10,000, the amendments were held to be retroactive, and appellant's conviction was reclassified as an aggravated felony as a result of those amendments. (See *I.N.S. v. St. Cyr* (2001) 533 U.S. 289, 292; *Aragon-Ayon v. I.N.S.* (9th Cir. 2000)

206 F.3d 847, 853; *Al-Sharif v. U.S. Citizenship and Immigration* (3d Cir. 2013) 734 F.3d 207, 213; *People v. Borja* (2002) 95 Cal.App.4th 481, 486.)

The People assert the subsequent reclassification of appellant's conviction likely resulted in his deportation, and he is not entitled to relief because he received the section 1016.5 advisement at the time of his plea – that he "may" be subject to deportation – and that was sufficient to address any future harsh immigration consequences that he did not subjectively know about at the time of his plea, even though his conviction actually resulted in his mandatory deportation.

The People's argument is meritless since appellant pleaded to an "offense relating to a controlled substance" that subjected him to mandatory deportation at the time of his plea.  Assuming, without accepting the People's argument, however, we still reject the premise that appellant was not entitled to relief.  The generic section 1016.5 language simply stated that "deportation was a possibility.  [Citation.]  The problem for [the defendant], though, was that deportation in these circumstances was mandatory – and when he accepted the plea deal, he remained unaware of that crucial fact.  [Citation.]" (*Vivar, supra*, 11 Cal.5th at p. 533.)  The record establishes appellant's subjective error that he did not know his conviction " 'would harm [him] in the future' " (*Mejia, supra*, 36 Cal.App.5th at p. 872), or that he would face mandatory deportation because of unforeseen future events including the subsequent amendment of federal immigration law.

The record further supports appellant's showing of subjective error when he entered his plea to an offense that mandated his deportation.  In his supporting declaration, appellant stated that he did not know he was pleading to an offense that was going to result in such harsh immigration consequences.  Mr. Torres testified he had no independent memory of appellant's case or their discussions, and only testified about his usual practice of asking clients about their immigration status at that time.  Mr. Torres's only recollection of appellant's case resulted from reviewing the surviving court

documents, recognizing the name of the deputy district attorney, and recalling that she was a tough negotiator and would not have agreed to an alternate disposition. Mr. Torres did not acknowledge at the evidentiary hearing that appellant pleaded to an offense that would mandate his deportation, even though he had already been deported at the time of that hearing.

In contrast, appellant declared that prior to his plea, he met with Mr. Torres one time while he was in jail, and Mr. Torres "never interviewed me to asked about my immigration status before advising me to accept the plea bargain offered by the DA." Mr. Torres told him "the plea bargain was the best deal for me because I faced prison if I went to trial, and the plea agreement limited my exposure to a brief period in jail." While appellant never denied he signed the plea form with the section 1016.5 advisement, he declared that he did not recall signing it and, more importantly, he did not remember "any discussion regarding immigration consequences or any other potential non-deportable pleas with my attorney prior to changing my plea."

## B. *Prejudice*

Also, as in *Vivar, Camacho,* and *Mejia*, appellant met his burden to show his subjective error was prejudicial, corroborated with objective evidence that there was a reasonable probability he would have rejected the plea "if [he] had correctly understood its actual or potential immigration consequences," based on the relevant factors of his "ties to the United States, the importance [he] placed on avoiding deportation, [and his] priorities in seeking a plea bargain …." (*Vivar, supra*, 11 Cal.5th at p. 529.)

Appellant declared he entered the United States when he was 18 years old, he had lived and worked in California for 26 years, he had continually lived in the United States, he was married to a citizen, his six children were born here, and most of his extended family legally lived in the United States. He had been employed and was the family's primary source of income. Appellant declared his life was in the United States, he wanted to become a citizen and continue to support his family, and he did not want to live

in Mexico. He successfully completed probation, and there is no evidence he was arrested, charged, or convicted of any other offense after his conviction and dismissal of the money laundering conviction. Appellant further declared: "Had I been warned of the immigration consequences of my plea, I would not have entered such a plea. I would have asked my lawyer to negotiate for a different deal to mitigate the immigration consequences, or I would have insisted on going to trial – I would have done whatever was necessary to avoid the immigration consequences of permanent exclusion. [¶] … [¶] Had I known the case would constitute a deportable conviction under immigration law, I would have definitely insisted that my attorney negotiate an alternate plea that would mitigate the immigration consequences."

A " 'prejudicial error' occurs under [the 2019 version] of section 1473.7 when there is a *reasonable probability* that the person would not have pleaded guilty – and would have risked going to trial (even if only to figuratively through a ' "Hail Mary" ') – had the person known that the guilty plea would result in mandatory and dire immigration consequences. [Citation.]" (*Mejia, supra,* 36 Cal.App.5th at p. 871, quoting *Lee v. United States* (2017) ___ U.S.___ [137 S.Ct. 1958, 1967]; *Camacho, supra*, 32 Cal.App.5th at p. 1010.) Appellant's declaration established the reasonable possibility that he would not have pleaded to the charged offense and risked going to trial if he had known he was going to be deported as a result of his plea.

## C.     *The Superior Court's Factual Findings*

The superior court denied appellant's motion to vacate based on ineffective assistance under the 2017 version of section 1473.7. In doing so, the court found the entirety of appellant's supporting declaration was not credible. The court focused on appellant's declaration that he was not advised about immigration consequences at the time of his plea, and found this statement was refuted by the existence of the section 1016.5 advisement in the change-of-plea form that appellant signed and initialed in 1996.

The court relied on this alleged discrepancy to reject the credibility of appellant's declaration and deny relief.

As explained in *Vivar*, the superior court's denial of a motion to vacate under section 1473.7 is subject to independent review and deference must be given to the court's personal observations of witnesses, but where the facts derive from written declarations, "there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar, supra*, 11 Cal.5th at p. 528, fn. omitted.)

In this case, we are compelled to conclude the court's factual findings are not supported by substantial evidence and are refuted by the record, particularly given the different findings required by the 2019 version of section 1473.7, and *Vivar*'s rejection of the 1016.5 advisement as sufficient to mitigate prejudice. Mr. Torres was the only witness at the evidentiary hearing, and he did not have any direct recollection of appellant's specific case, his conversations with appellant, or whether he asked appellant about his immigration status. Instead, as in *Camacho*, Mr. Torres testified about his usual practice when he thought a client's immigration status might be relevant. (*Camacho, supra*, 32 Cal.App.5th at pp. 1002–1003.)

Appellant submitted his change-of-plea form from the May 1996 plea hearing as an exhibit to both his motion to vacate filed pursuant to section 1016.5 in 2015, and his section 1473.7 motion filed in 2017, which is why the document was before the superior court when it ruled on this motion. In his supporting declaration, appellant never said that he did not sign the form, and he did not dispute the validity of his initials and signature on the form. Instead, he declared that he did not "*remember* receiving any court admonishment regarding potential immigration consequences, nor do I remember

26.

any discussion regarding immigration consequences or any other potential non-deportable pleas with my attorney prior to changing my plea." (Italics added.)

Appellant's declaration that he did not remember being verbally advised by the court is not inconsistent with his signature on the change-of-plea form. While section 1016.5 requires the court advise appellant of potential immigration consequences, "a validly executed waiver form is a proper substitute for verbal admonishment by the trial court. [Citation.]" (*People v. Ramirez*, *supra*, 71 Cal.App.4th at p. 521.) The transcript of the plea hearing no longer exists, but the advisement on the change-of-plea form satisfied the section 1016.5 requirement, even if the court failed to read the advisement to appellant when he entered his plea. If the reporter's transcript still existed and showed the court read the 1016.5 advisement at the plea hearing, appellant declared that he did not *remember* receiving the advisement and did not declare that it was never given to him. As a result, the superior court's rejection of appellant's credibility on this point, for purposes of his motion to vacate, is not supported by substantial evidence and refuted by the entirety of the record.

The superior court also found appellant's credibility was undermined by Mr. Torres's trial testimony: "[Appellant] says he does not remember his attorney discussing immigration consequences with him. However, Mr. Torres testified that every defendant he represented since 1992 completed an intake sheet that asked about immigration status, and that it was his custom and practice to include discussions about immigration consequences, about which he was well versed, in his discussions with his clients about a potential plea. Mr. Torres's credibility has not been assailed. Thus, [appellant's] statement indicates either a faulty memory or lack of truthfulness."

While Mr. Torres testified in person at the evidentiary hearing, the court's findings are not supported by substantial evidence. Mr. Torres initially did not recall anything about appellant's case. After reviewing the surviving court records, he recognized the name of the deputy district attorney who filed the charges and appeared at the plea

hearing and recalled the refusal of this particular prosecutor to negotiate plea offers in similar cases at that time. The rest of Mr. Torres's testimony was based on his custom and practice at the time he represented appellant. He did not recall any specific conversations with appellant about his immigration status. He reviewed appellant's change-of-plea form and testified to his practice at the time, that he never would have signed such a document without advising his client of the immigration consequences of his plea, but he lacked a direct memory of any such conversation.

Mr. Torres's credibility may not have been "assailed" about the issues that he directly recalled, but he lacked any memory of appellant's particular case or their conversations. Even if Mr. Torres followed his customary practice to read the generic section 1016.5 advisement to appellant prior to the plea, *Vivar* held that such an advisement is insufficient to deny a section 1473.7 motion since it only stated that he "may" be subject to immigration consequences. In this case, the section 1016.5 advisement was insufficient to inform appellant that his conviction made deportation and exclusion a certainty.

**D.    *Conclusion***

In reviewing the denial of a section 1473.7 motion to vacate, "[c]ourts should subject the trial court's prejudice finding … to independent review, a standard that heavily weighs trial court factual findings based on the court's own observations, but not trial court findings arising only from a cold record." (*Vivar, supra*, 11 Cal.5th at p. 534.) "[T]here is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar*, *supra*, 11 Cal.5th at p. 528, fn. omitted.)

We reject the superior court's factual findings that completely discounted the credibility of appellant's declaration and instead relied on Mr. Torres's testimony, even though he lacked any direct recollection about appellant and the specific facts of his case, aside from recognizing the name and reputation of the deputy district attorney who handled appellant's case. "The bottom line here is that under the new paradigm of section 1473.7 as amended, [the defendant] plainly established that he did not 'meaningfully understand' or 'knowingly accept' the immigration consequences of his guilty pleas, just as the defendant in *Camacho* did not 'meaningfully understand' or 'knowingly accept' the immigration consequences of his no contest plea. [Citation.]" (*Mejia*, *supra*, 36 Cal.App.5th at pp. 873–874.)

We find that based on our independent review, appellant met his burden to show his own subjective error that was prejudicial and damaged his ability to meaningfully understand, defend against, or knowingly accept the actual adverse immigration consequences of his no contest plea in May 1996 to a violation of section 11370.9, subdivision (a), a conviction that resulted in his mandatory deportation.

## DISPOSITION

The order denying appellant's motion to vacate his 1996 conviction is reversed, and the matter is remanded to the superior court with instructions to grant the motion and vacate the conviction.